August 31, 2006


Hon. Charles R. Fulbruge, III, Clerk
United States Court of Appeals
 For the Fifth Circuit
600 S. Maestri Place
New Orleans, LA 70130

Re:   *Wilbert Ray Hutson v. Nathaniel Quarterman*,[1]  No. 05-20559
      (USDC No. 4:05-CV-01163).

Dear Mr. Fulbruge:

        Please file this letter brief on behalf of Respondent-Appellee, Nathaniel
Quarterman, Director ("the Director"), Texas Department of Criminal Justice,
Correctional Institutions Division ("TDCJ-CID"), in the above referenced cause and
distribute the enclosed copies to the judges of the panel to whom this appeal is
assigned.  Also enclosed for return to the Court is the record on appeal (four volumes)
and the computer disc required by this Court's local rule 31.1.

## STATEMENT REGARDING ORAL ARGUMENT

        Pursuant to FED. R. APP. P. 34(a)(1), oral argument should be granted because
the issue upon which a certificate of appealability ("COA") was granted is a question
of first impression in this Circuit; therefore, the decisional process would be
significantly aided by oral argument.

## STATEMENT REGARDING JURISDICTION

        This is a habeas corpus case brought by a state prisoner, Wilbert Ray Hutson

---

[1] The previous named Respondent-Appellee was Doug Dretke.  Effective June
1, 2006, Nathaniel Quarterman succeeded Doug Dretke as Director of the Texas
Department of Criminal Justice, Correctional Institutions Division.  Under the Federal
Rules of Appellate Procedure, Rule 43(c)(2), Nathaniel Quarterman "is automatically
substituted as a party."

Honorable Charles R. Fulbruge, III, Clerk
August 31, 2006
Page 2

("Hutson"), under 28 U.S.C. § 2254.  On June 1, 2005, the court below entered final judgment denying the petition.  3 R 579; docket entry number 15.[2]  Hutson's notice of appeal was filed on June 27, 2005.  3 R 580.  The district court denied a COA.  3 R 577-78.  This Court granted a COA in an order dated June 6, 2006. This Court has jurisdiction over this appeal under 28 U.S.C. §§ 1291, 2253.

### ISSUE PRESENTED[3]

This Court granted a COA in part, as follows:

> Hutson has shown that reasonable jurists would debate whether a postconviction motion for DNA testing is an application for 'other collateral relief' so as to suspend the limitations period of § 2244(d).  Thus, COA is GRANTED with regard to this issue.  COA is DENIED in all other

---

[2] "R" refers to the federal record on appeal preceded by the volume number(s) and  followed by the page number(s).  "HB" refers to Hutson's brief, followed by the page number(s).

[3] Hutson raises other claims besides the single issue upon which this Court granted a COA.  He argues that he is entitled to equitable tolling, HB at (A), (07.), (10.), (16.); that his untimely filed writ of cert. delayed the start of the limitations period, HB at (A-2); that extrinsic fraud prevented him from filing his federal writ entitling him to equitable tolling, HB at (A-2), (B-2), (09.), (10.), (15.), (16.); that the district court erroneously dismissed civil action number H-05-1281 as a subterfuge to avoid merits disposition, thus entitling Hutson to equitable tolling, HB at (13.) - (14.), (16.); and, that the denial of access to the court by TDCJ-CID confiscation of legal materials entitled him to equitable tolling. HB at (14.), (16.).  Only the issue of, whether the filing of a motion for DNA testing is other collateral review for the purpose of statutorily tolling the statute of limitations, is properly before this Court. This Court lacks jurisdiction to consider any other issues raised by Hutson on appeal. *Sonnier v. Johnson,* 161 F.3d 941, 946 (5th Cir. 1998) (grant of a COA is jurisdictionally issue specific).

Honorable Charles R. Fulbruge, III, Clerk
August 31, 2006
Page 3

    respects. . . .

"ORDER" filed June 6, 2006, at 2.

## STATEMENT OF THE CASE

### A.    Course of Proceedings and Disposition Below

    The Director has lawful custody of Hutson pursuant to a judgment and sentence of the 183rd District Court of Harris County, Texas, in cause number 875569, styled *The State of Texas v. Wilbert Ray Hutson*. Tr 91-92.[4]  Hutson was indicted for the felony offense of aggravated assault with a deadly weapon, Tr 5, to which he entered a plea of not guilty. 5 SF 7.  On September 26, 2001, a jury found Hutson guilty, Supp. SF 23, and on the same day, 6 SF cover, assessed his punishment at ten years confinement in the TDCJ-CID.  6 SF 16.

---

    [4] Since the Texas Attorney General's Office was not served with this action by the court below, 1 R 1-3, no state court records were filed in that court; therefore, this Court has no state court records upon which to decide the issue presented.  The Director is filing a motion to supplement the record on appeal simultaneously with the filing of this brief. Either the record on appeal, or the state court records, supplied by the Director, will support all record citations in this brief.  "Tr" refers to the transcript of documents filed in the state trial court during the conviction proceedings, entitled "CLERK'S RECORD," followed by the page number(s). "Tr (DNA)" refers to the transcript of documents filed in the state trial court during the DNA testing proceedings, entitled "CLERK'S RECORD," followed by the page number(s). "SF" refers to the statement of the facts of the testimony given during the conviction proceedings, entitled "REPORTER'S RECORD," preceded by the volume number(s) and followed by the page number(s). "SF (DNA)" refers to the statement of facts of the testimony given during the DNA testing hearing, entitled "REPORTER'S RECORD," followed by the page number(s).  As indicated by the record cite designations and the above Statement of the Case subsection, there were three relevant proceedings: (1) the trial court conviction, direct appeal, and PDR, (2) the trial court DNA hearing, direct appeal, and PDR, and (3) the state writ of habeas corpus.

Honorable Charles R. Fulbruge, III, Clerk
August 31, 2006
Page 4

The Fourteenth Court of Appeals affirmed Hutson's conviction on direct appeal. *Wilbert Ray Hutson v. State,* No. 14-01-01097-CR (Tex.App.–Houston [14th Dist.] Oct. 10, 2002, pet. ref'd). His petition for discretionary review was refused by the Texas Court of Criminal Appeals ("TCCA"), on April 2, 2003, *Id.,* PDR No. 2076-02, and his motion for rehearing was untimely received and placed in his file, as reflected by the TCCA clerk's letter dated April 21, 2003. *See also* TCCA docket entry 4/21/03; *Ex parte Hutson*, Application No. 56,004-02 at 13, 30, 39. Hutson admits that he did not file a timely or proper writ of certiorari to the Supreme Court and that he was notified of same by the Court by a letter dated November 10, 2003. 1 R 127-32, 187; *see also Ex parte Hutson*, Application No. 56,004-02 at 13, 30, 39.

Next, Hutson contends that he filed a motion for DNA testing on January 28, 2003, *id,.* at 39; however, the Harris County District Clerk's records reflect same was filed January 3, 2003. *See* DNA proceedings state court records. The State responded on February 2, 2004, Tr (DNA) 5; a hearing was held on April 12, 2004, SF (DNA) at cover, and the trial court denied the motion for DNA testing on the same date. Tr (DNA) 16-18; SF (DNA) 16. The Fourteenth Court of Appeals affirmed the trial court's denial of DNA testing in an opinion filed April 28, 2005. *Wilbert Ray Hutson v. State*, No. 14-04-00414-CR (Tex.App.–Houston [14th Dist.], pet. ref'd). Thereafter, the TCCA refused Hutson's PDR on September 28, 2005. *Id.,* PDR No. 782-05.

While the appeal of the denial of his DNA testing motion was pending, Hutson challenged his conviction by a state writ of habeas corpus. *Ex parte Hutson*, Application No. 56,004-02.[5] He filed it July 26, 2004, *id.,* at 2, and the TCCA denied same on February 9, 2005. *Id.,* at cover.

---

[5] Hutson's first state writ challenged a Harris County drug conviction and eight-month sentence, *Ex parte Hutson*, Application No. 56,004-01, at 2, and is therefore, irrelevant to the issue in this appeal. These records will not be included in the state court records attached to the Director's motion to supplement the record on appeal.

Honorable Charles R. Fulbruge, III, Clerk
August 31, 2006
Page 5

Finally, Hutson filed the instant action on March 28, 2005.  1 R 9.[6]  The writ was not served on the Director or the Texas Attorney General.  The court below *sua sponte* denied the writ as time-barred and denied a COA, without considering the issue presented in this appeal.  3 R 571-78.  Final judgment was signed on May 31, 2005 and entered June 1, 2005.  3 R 579; docket entry no. 15.  This timely appeal followed.

## B.    Statement of Facts

The evidence of the aggravated assault with a deadly weapon was overwhelming, as summarized by the prosecutor during his opening statement:

Ladies and gentlemen, the State is going to bring you evidence that's going to show that on April 4th of this year [5 SF 12],[7] the Defendant Wilbert Ray Hutson, was employed by a man named Mark Dicks [5 SF 13].

And Mr. Dicks first name is William [5 SF 17, 115].  Mark Dicks owns a business that does, among other things, telecommunications, telemarketing [5 SF 14].

Mr. Hutson was employed as a telemarketer.  Mr. Dicks was hired by a client to market local phone services [5 SF 42].  The client who hired Mr. Dicks had paid them regularly up until the very last check that they were to receive from this local phone service company [5 SF 14, 16].

As a result of that, Mr. Dicks laid off 95 percent of his employees at that

---

[6]  Hutson filed another federal writ on April 12, 2005, 1 R 45, 53, *Hutson v. Dretke*, No. H-05-1281 (S.D.Tex. Hou. Apr. 22, 2005) which was found to be a duplicate of this action and dismissed by the district court as improvidently filed.  3 R 569.

[7]  Record cites are provided by the Director to support the prosecutor's opening statement.

Honorable Charles R. Fulbruge, III, Clerk
August 31, 2006
Page 6

time that were doing telemarketing [5 SF 16, 40].

Among them was Mr. Hutson.  Mr. Dicks explained to each of the
employees that he would get them paid.  However, he was not going to
be able to pay them when they were supposed to be paid.  He wasn't
going to be able to pay them their last paycheck at that time [5 SF 17].

You're going to find out that Mr. Dicks did in fact pay everyone within
two weeks of the time that he let them go [5 SF 17].  Mr. Hutson was
owed a total of $105 on his last paycheck [5 SF 17].  Mr. Hutson was
called by Mark Dicks to come in and pick up his final paycheck.  They
put the envelope on the door to the office, and you'll see some
photographs of the office [8 SF 9-15].  But  imagine a building with a
number of office suites inside.  And they taped the check to the door for
two days, and Mr. Hutson hadn't shown up to pick it up.  So the check
was brought back inside [the receptionist area. 5 SF 18, 82].

Well, on the day of April 4th, Mr. Dicks came back from lunch around
1:00 in the afternoon [5 SF 18].  And there is an area within their office
suite that they refer to as the calling room.  It's where the telemarketers
work.  It's  set up with a number of different desks.

Mr. Dicks walked back there and saw Mr. Hutson rummaging through
a desk that did not belong to him [5 SF 61].  Mr. Dicks told him, you
need to get out, you need to leave,[5 SF 18] or I'm going to call the
police [5 SF 26, 38, 61, 67-8, 120].  That's not your desk.  You don't
belong going through the stuff that's in there.  And he turned to walk
out.  Mr. Dicks wasn't angry at that time [5 SF 18].  He had never had
any problems with the Defendant before [5 SF 14].   The testimony is
going to show that at that time, a man named Don Black, who was also
employed as a telemarketer, saw the Defendant reach into his pocket at
that time and pull out something.  He didn't know what it was going to
be.  He feared it was going to be a gun.  He looked and saw that is was
in fact a utility knife [5 SF 26, 35, 61-4, 70, 92-5; 8 SF 4].

Honorable Charles R. Fulbruge, III, Clerk
August 31, 2006
Page 7

He saw the Defendant leave the room that they were in, and go down a very short hallway. The Defendant then attacked, from behind, Mark Dicks [5 SF 84, 99]. Mark Dicks received, fortunately, only a puncture wound to his neck [8 SF 6], and a laceration that was not deep, about eight to ten inches long on the side of his torso [5 SF 22-23, 26, 27, 36-7, 47-8, 49, 50, 52-4; 8 SF 8].

Mr. Dicks fought off the Defendant, and that was witnessed by another employee that you'll meet. His name is Daniel Nauert [5 SF 23, 71, 76, 77, 78, 82, 84, 85-6].

During the time that the assault was happening, Mr. Dicks and Mr. Hutson wound up pretty much destroying, rearranging the office furniture in the room where the altercation was taking place [5 SF 49-50, 69].

The building manager heard the ruckus [5 SF 137]. She came and said that she had called the police [5 SF 138], at which time she threw open the door to his office suite [5 SF 139], and the Defendant exited, but not before Mark Dicks got out. And when he came out, he was carrying a cup of coffee that he threw on the department manager [5 SF 124, 140], Linda Lively, and then he took off. He was later arrested, not at the scene. . . .

5 SF 8-11.

The evidence supporting the motion for DNA testing was non-existent. As the Court of Appeals held in the appeal of the trial court's denial of Hutson's motion:

Before granting post-conviction DNA testing, the trial court must first determine whether (a) testable biological material exists in a condition making forensic DNA testing possible and has not been altered or tampered with in any material respect, and (b) identity was or is an issue in the case. TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(1)(A) & (B). In this case, the State submitted affidavits from relevant authorities

Honorable Charles R. Fulbruge, III, Clerk
August 31, 2006
Page 8

> averring that the Harris County Clerk's Office, the Houston Police
> Department crime lab, the Houston Police Department property room,
> and the Harris County Sheriff's Office property room do not have
> custody of any property or evidence related to . . . [Hutson's] case.
> Moreover, . . . [Hutson] introduced no evidence to show that testable
> DNA evidence exists.
>
> After reviewing the evidence submitted at the post-conviction DNA
> hearing, we find that the record supports the trial court's determination
> that no evidence containing biological material capable of DNA testing
> exists. Deferring to the trial court's finding that this evidence does not
> exist, we hold that the trial court properly denied . . . [Hutson's] motion
> for post-conviction DNA testing. *See Lopez v. State*, 114 S.W.3d 711,
> 717 (Tex.App.–Corpus Christi 2003, no pet.) . . . .

*Wilbert Ray Hutson v. State*, Slip op. No.14-04-00414-CR, at *5. Finally, while the
Court of Appeals found it unnecessary to consider the State's other argument, *id*., at
*5 n.5, it is undeniable, as demonstrated by the statement of facts of the offense
described above, that identity was not an issue in Hutson's conviction for aggravated
assault with a deadly weapon. Therefore, under Texas law, the motion to test DNA
evidence was frivolous.

## SUMMARY OF THE ARGUMENT

The writ is not time-barred if the time that the motion for DNA testing was
pending tolled the limitations period. It is time-barred if the motion did not toll the
limitations period.

The motion for DNA testing was not "other collateral review with regard to the
pertinent judgment or claim" pursuant to the plain language of the statute of
limitations. A motion for DNA testing does not provide an avenue for "review" of
the pertinent judgment, instead, providing for the discovery and testing of a small
category of fact-based evidence. Further, a collateral review has consistently been
interpreted to allow for the granting of relief, pursuant to a review of the judgment.
Since a motion for DNA testing does not provide an avenue for relief, it cannot be

Honorable Charles R. Fulbruge, III, Clerk
August 31, 2006
Page 9

collateral review for the purpose of tolling the statute of limitations.

Finally, even if this Court were to find that the DNA testing statute provides for a review of the judgment, review is premised upon granting a motion to test DNA evidence, testing that DNA evidence, and only then reviewing the other evidence upon which the conviction relied to determine if a different result would have been probable. In this case there was no DNA evidence to test, none was tested, and the identity of the defendant was never in question, thereby, foreclosing any review of the conviction. Since no review occurred, tolling is not required and this writ is time-barred.

## ARGUMENT

### Standard of Review for the District Court

Hutson's federal habeas action, filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),[8] is governed by the AEDPA. *Williams v. Cain*, 125 F.3d 269, 274 (5th Cir. 1997). The following AEDPA standards apply:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an

---

[8] Pursuant to *Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1998), Hutson's petition was filed for purposes of the statute of limitations when it was placed in prison officials' hands for mailing. The district court filed the instant writ on April 4, 2005, 1 R 4, and Hutson executed it on March 28, 2005, 1 R 12; therefore, it is clear that it was filed, for AEDPA purposes, after the effective date of the AEDPA.

Honorable Charles R. Fulbruge, III, Clerk
August 31, 2006
Page 10

> application created by State action in violation of the
> Constitution or laws of the United States is removed, if the
> applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was
> initially recognized by the Supreme Court, if the right has
> been newly recognized by the Supreme Court and made
> retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or
> claims presented could have been discovered through the
> exercise of due diligence.

    b.    The time during which a properly filed application for State post-
conviction or *other collateral review*[9] with respect to the pertinent
judgment or claim is pending shall not be counted toward any period of
limitation under this subsection.

28 U.S.C. § 2244(d) (West 2006).

    The DNA testing statute sets out the mandatory prerequisite for a trial court to
order DNA testing:

ART. 64.03. REQUIREMENTS; TESTING

(a) A convicting court may order forensic DNA testing under this
chapter only if:
    (1) the court finds that:
        (A) the evidence:
            (I) still exists and is in a condition making DNA
            testing possible; and
            (ii) has been subjected to a chain of custody
            sufficient to establish that it has not been

---

[9] Emphasis added to highlight issue before the Court–is DNA testing "'other
collateral review' with respect to the pertinent judgment or claim . . .'"

Honorable Charles R. Fulbruge, III, Clerk
August 31, 2006
Page 11

> substituted, tampered with, replaced, or altered in any material respect, and
>
> (B) identity was or is an issue in the case; and
>
> (2) the convicted person establishes by a preponderance of the evidence that:
>
> > (A) the person would not have been convicted if exculpatory results had been obtained through DNA testing; and
> >
> > (B) the request for the proposed DNA testing is not made to unreasonably delay the execution of sentence or administration of justice . . .

The DNA testing statute also instructs the trial court with regard to its responsibilities, post-testing:

> ART. 64.04. FINDING
>
> After examining the results of testing under Article 64.03, the convicting court shall hold a hearing and make a finding as to whether, had the results been available during the trial of the offense, it is reasonably probable that the person would not have been convicted. . . .

See Appendix I, for a complete copy of the DNA testing statute.

**Standard of Review for this Court**

This Court reviews the district court's findings of fact for clear error, but reviews issues of law de novo. *Mann v. Scott*, 41 F.3d 968, 973 (5th Cir. 1994).

**The Claims Are Time-Barred Only if the Proceedings Associated with the Motion for DNA Testing Does Not Toll the Statute of Limitations.**

The statute of limitations was correctly applied by the court below barring a review of the merits of the claims raised in this federal writ. Hutson's allegations relate to the validity of his 2001 aggravated assault with a deadly weapon conviction. Section 2244(d)(1)(A) provides that the one-year limitation period shall run from the

Honorable Charles R. Fulbruge, III, Clerk
August 31, 2006
Page 12

date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. Under Section 2244(d)(1)(A), Hutson's conviction became final at the latest on July 1, 2003, when the time expired for filing a petition for writ of certiorari in the United States Supreme Court.

Hutson's conviction was affirmed on appeal on October 10, 2002. *Hutson v. State*, No. 14-01-01097-CR (Tex.App–Houston [14th Dist.] 2002, pet. ref'd.). His PDR was refused on April 2, 2003. *Hutson v. State*, PDR No. 2076-02. Therefore, Hutson's conviction became final when the time for filing a petition for writ of certiorari expired, that is, ninety days after the Court of Criminal Appeals denied review. SUP CT. R. 13.1 (West 2006).[10] Denial of the PDR occurred on April 2, 2003, accordingly, the one-year limitation period began on July 1, 2003 and ended on July 1, 2004. Under a literal reading of the AEDPA, Hutson's writ, filed on March 28, 2005,[11] 1 R 12, almost nine months after the limitation period expired, is untimely.

Further, the 28 U.S.C. § 2244(d)(2) tolling provision (tolling for state writs) is

---

[10] Hutson's motion for rehearing on his PDR was untimely received and placed in his file, as reflected by the TCCA clerk's letter dated April 21, 2003. *See also* TCCA docket entry 4/21/03; *Ex parte Hutson*, Application No. 56,004-02 at 13, 30, 39. Hutson also admits that he did not file a timely or proper writ of certiorari to the Supreme Court and that he was notified of same by the Court by a letter dated November 10, 2003. 1 R 127-32, 187; *see also Ex parte Hutson*, Application No. 56,004-02 at 13, 30, 39. Both of these untimely events have no effect on the application of the statute of limitations. *See Foreman v. Dretke*, 383 F.3d 336, 339-41 (5th Cir. 2004) *citing Artuz v. Bennett*, 531 U.S. 4 (2000) and *Roberts v. Cockrell,* 319 F.3d 690 (5th Cir.2003)(requiring the filing of a *timely* appeal or collateral attack to affect the calculation of the statute of limitations period).

[11] Pursuant to *Spotville v. Cain*, 149 F.3d at 378 (a federal writ of habeas corpus is filed when it is tendered to prison officials for mailing). In the instant case, the Director will assume *arguendo* that Hutson tendered his writ on March 28, 2005, the date that he executed the petition and stated that he placed same in prison officials' hands for mailing. 1 R 12.

Honorable Charles R. Fulbruge, III, Clerk
August 31, 2006
Page 13

inapplicable and does not rescue Hutson's untimely petition as his state writ was filed on July 26, 2004, *see Ex parte Hutson*, Application No. 56,004-02 at 2, after the limitation period expired on July 1, 2004.

While the court below deviated a little from the above calculation,[12] it does not affect the result reached, which is the same as above–the writ was properly time-barred.  3 R 572-76.  However, when the filing and disposition of the motion for DNA testing is taken into account, if tolling applies, this writ is not time-barred.  This is true because the DNA motion was filed January 3, 2003, before the direct appeal PDR was refused on April 2, 2003, *Hutson v. State*, PDR. No. 2076-02, and the PDR review of the trial court's ruling against testing was not refused until September 28, 2005, *Hutson v. State*, PDR No. 782-05,[13] after Hutson filed his federal writ petition.  1 R 12.  Therefore, if this Court holds that a motion for DNA testing is "other collateral review" for the purpose of tolling the limitations period, Hutson's motion and review of same through PDR would toll from the beginning of the one-year period through the filing of this federal writ.

### Construing the Statute Under Federal and State Law Leads to the Inescapable Conclusion that "Other Collateral Review" Does not Include a Discovery Mechanism Such as a Motion for DNA Testing.

This Court has clearly held that the language of the federal habeas statute of limitations must be interpreted under federal law.  *Caldwell v. Dretke*, 429 F.3d 521, 527 (5th Cir. 2005) ("[a]lthough an order of deferred adjudication is not a judgment under Texas law, it is a judgment under the relevant federal law.").  In *Caldwell* this

---

[12] The court below found that the PDR was refused on April 18, 2003, 3 R 571, 574, when it was actually refused on April 2, 2003.  *Compare* TCCA docket sheet "DISP" date to "FINAL  DISP" date; *see also* copy of cover of shuck of the appellate record reflecting "04-02 2003." disposition date.

[13] Even if tolling is allowed from the date of the filing of the motion for DNA testing, January 3, 2003, to the date of the trial court's denial of the motion, April 12, 2004, this writ would still be time-barred (see page 4 of this brief for relevant state court record cites).

Honorable Charles R. Fulbruge, III, Clerk
August 31, 2006
Page 14

Court relied on the well established rule of statutory construction:

> In interpreting AEDPA, our task is to construe what Congress has enacted, beginning with the language of the statute. _Duncan v. Walker_, 533 U.S. 167, 172, . . . (2001). It is an elementary canon of statutory construction that we must give a term consistent meaning throughout an act. _Morse v. Republican Party_, 517 U.S. 186, 249-50, . . . (1996). In interpreting the term "judgment," we observe that the term should be construed, if possible, consistently throughout AEDPA. _See Gustafson v. Alloyd Co._, 513 U.S. 561, 568, . . . (1995).

_Id. See also Roberts v. Cockrell_, 319 F.3d 690, 694 (5th Cir. 2003)("[w]e find no reason to look to state law to determine when a state conviction becomes final for the purposes of § 2444(d)(1)(A)."). Finally, this Court has held that "[y]et, as even the _Roberts_ court conceded, some consideration of state law is inevitable when analyzing ADEPA [sic] limitations." _Foreman v. Dretke_, 383 F.3d 336, 339 (5th Cir. 2004). This Court looked ". . . to state law for a determination of how long a prisoner has to file a direct appeal. . . .", _Roberts_, 319 F.3d at 693-94, and in _Salinas v. Dretke_, 354 F.3d 425, 430 n.5 (5th Cir. 2004) this Court looked to state law and found that "State law defines the contours of the state appellate process, and it is only by looking at the state system that we can determine whether Salinas's right to file an "out-of-time" PDR comes before, or after, the conclusion of direct review in state courts."

The plain language of the statute "other collateral review with respect to the pertinent judgment or claim,"[14] 28 U.S.C. § 2244(d)(2) (West 2006), has already been interpreted by this Court, as follows:

Accordingly, with this language, Congress meant to include within the

---

[14]    In _Duncan v. Walker_, 533 U.S. 167, 177 (2001), the Supreme Court recognized that "other collateral review" "means all collateral review. . . in recognition of the diverse terminology that different States employ to represent the different forms of collateral review that are available after a conviction." However, the Court also inferred that such review would have the ability to grant relief.

Honorable Charles R. Fulbruge, III, Clerk
August 31, 2006
Page 15

scope of § 2244(d)(2) those 'properly filed' applications, without respect
to state nomenclature or the nature of the petitioner's state confinement,
that, pursuant to the wording of § 2244(d)(2), seek 'review' of the
'pertinent judgment or claim'.   For our purposes, the key inquiry is
whether Moore's mandamus application sought 'review' of the
judgment pursuant to which he is incarcerated. . . .

In short, the application did not seek *review of the judgment. See e.g.*,
WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1944
(1986) (defining 'review' as, *inter alia*, 'to *reexamine* judicially'; 'to *go
over* or *examine* critically or deliberately'). Instead, it sought a directive
that the trial court rule.  Accordingly, the mandamus application did not
toll the limitations period; it was not a 'properly filed application for
State post-conviction or other collateral review with respect to the
pertinent judgment'.[15]

*Moore v. Cain*, 298 F.3d 361, 366-7 (5th Cir. 2002).

A review of the phrase as used in the federal statutes governing a federal writ,[16]
all interpret the phrase to mean collateral proceeding that provides review and can
effectuate relief from confinement.  The first time it is used after § 2244(d)(2) is in
§ 2254(e)(2)(A)(i), which is the standard of review for the granting of a federal
evidentiary hearing, stating that one shall not be granted "unless the applicant shows
that–the claim relies on–a new rule of constitutional law, made retroactive to cases
on collateral review by the Supreme  Court, that was previously unavailable; . . ."
This use of the phrase could include a writ of habeas corpus in Texas, since new rules
of constitutional law can be formulated through a state writ, but could not be
interpreted as referring to a motion to test DNA, such a motion being a factual
investigation as opposed to a legal determination.  The phrase is used again in the

---

[15] Emphasis supplied by the Court.

[16] All cites to federal habeas corpus statutes refer to the 2006 version unless
otherwise specifically stated.

Honorable Charles R. Fulbruge, III, Clerk
August 31, 2006
Page 16

same statute, § 2254(i): ". . . ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceeding shall not be a ground for relief in a proceeding arising under section 2254." Again, in a § 2254 writ statute, it is consistent to believe that Congress was thinking habeas corpus here, *Morse v. Republican Party, supra.* (statutory construction requires court's to give a term consistent meaning throughout an act) especially, because 2254(i) is referring to grounds of relief that usually can be the basis for a grant of habeas relief.

The phrase is stated five times in § 2255 setting the limits of federal habeas review for federal convictions, and again, referring, in context, to challenging the judgment or sentence of a federal conviction; applying the statute of limitations to new rules of law "made retroactively applicable to cases on collateral review. . ."; and excepting successive petitions where a new rule of law is "made retroactive to cases on collateral review . . ."

28 U.S.C. §§ 2263 & 2265 refer to the same concept, but interchangeably call it "post-conviction review or other collateral relief" and "collateral attack". [17] The linchpin being that it is a proceeding to test the constitutional validity of the judgment and sentence of a capital conviction.

Finally, Black's Law Dictionary (West 1979 & 1991) defines "collateral attack" as follows:

> With respect to a judicial proceeding, an attempt to avoid, defeat, or evade it, or deny its force or effect, in some incidental proceeding not provided by law for the express purpose of attacking it. . . .  An attack on a judgment in any manner other than by action or proceeding, whose very purpose is to impeach or overturn the judgment; or stated affirmatively, a collateral attack on a judgment is an attack made by or

---

[17] In *Duncan v. Walker*, 533 U.S. at 172-73, the Supreme Court refers to §§ 2254(i), 2261(e) and 2264 in a statutory construction analysis, speaking to state and federal habeas writs, but holding that Congress did not intend that a federal writ toll the statute of limitations.

Honorable Charles R. Fulbruge, III, Clerk
August 31, 2006
Page 17

in an action or proceeding that has an independent purpose other than
impeaching or overturning the judgment. . . .

The controlling theme being that it involved a challenge, thereby requiring a review,
and the possibility of relief from a judgment[18] in a collateral proceeding.

The Circuits, that have considered the issue, have agreed with this Court that
"other collateral review," which will toll the statute of limitations, must entail a
review of the challenged judgment or sentence and the ability to grant relief. *See
Ford v. Moore*, 296 F.3d 1035, 1035 n.1, n.2, 1037-38 (11th Cir. 2002) (Florida rules
of criminal procedure 3.850 motion provides relief from judgment and 3.80 motion
provides relief from an illegal sentence, and both constitute "other collateral review"
that tolls the AEDPA statute of limitations); *Sibley v. Culliver*, 377 F.3d 1196, 1200
(11th Cir. 2004) (notice did not request relief and, "[i]n the context of . . . 2244(d)(2)
the defining factor of an application for review is that it seeks review."); *Bridges v.
Johnson*, 284 F.3d 1201, 1204 (11th Cir. 2002)(must attack the constitutionality or
legal correctness of a sentence or judgment); *Voravongsa v. Wall*, 349 F.3d 1, 6 (1st
Cir. 2003)("[g]iving the term application its natural meaning, a filing that purports to
be an application for State post-conviction or other collateral review . . . must set
forth grounds upon which it is based and must state the relief desired; it must attack
collaterally the relevant conviction or sentence."); *Walkowiak v. Haines*, 272 F.3d
234, 237 (4th Cir. 2001)(motion for correction or reduction of sentence does not
directly challenge conviction and does not toll).

The Second and Sixth Circuits have held that laws providing for the discovery
of evidence/records did not challenge a conviction and therefore did not provide a
basis for statutory tolling. *See Hodge v. Greiner*, 269 F.3d 104, 107 (2nd Cir.
2001)("Hodge's Article 78 proceeding did not challenge his conviction. Rather it
sought material he claimed might be of help in developing such a challenge, . . ." He

---

[18] In *Duncan* the Supreme Court also recognized that collateral review can be
a post-conviction writ of habeas corpus but can challenge different kinds of illegal
confinement–civil commitment, civil contempt of court, which would be other than
"post-conviction" collateral review. *Id.*, at 176-77.

Honorable Charles R. Fulbruge, III, Clerk
August 31, 2006
Page 18

should have conducted discovery during the pursuit of a timely collateral attack); *Johnson v. Randle*, 28 Fed. Appx. 341, 343 (6th Cir. 2001)(". . . Johnson filed a motion for the production of documents and for a free copy of the court records, these requests do not toll the statute of limitations. . . . The statute requires that there must be a request for collateral review with respect to the pertinent judgment.");[19]

This Court and the Seventh Circuit has held that preliminary motions, filed in advance of a writ of habeas corpus, do not toll the statute of limitations. *See Fierro v. Cockrell*, 294 F.3d 674, 680-81 (5th Cir. 2002)(a preliminary motion that is not itself an application for writ of habeas corpus does not toll the statute of limitations;[20] and *Lookingbill v. Cockrell*, 293 F.3d 256, 263 (5th Cir. 2002)(it is the filing of the habeas petition, not a motion for appointment of counsel, that tolls the limitations period). *Tinkler v. Hanks*, 255 F.3d 444 (7th Cir. 2001)(request to file second motion for post-conviction relief in state court merely procedural precondition for filing and does not toll the statute of limitations).

Having established that "other collateral review with respect to the pertinent judgment," interpreted by federal law, refers to a challenge to the constitutional validity of a judgment, state law must be reviewed to determine the difference between a state writ of habeas corpus, TEX. CODE CRIM. PROC. ANN. art. 11.07 (Vernon 2006), which does statutorily toll the statute of limitation, and a motion for DNA testing, TEX. CODE CRIM. PROC. ANN. art. 64.01 - 64.04 (Vernon 2006), which should not be interpreted to do the same.

The most that can be accomplished, through the plain language of the DNA testing statute, is to discover if there is testable DNA evidence that affects the identity

---

[19]  The unpublished opinion is attached as Appendix II.

[20]  The district courts in this Circuit are in agreement as well. *See Walker v. Dretke*, 2006 WL 1582000 (S.D.Tex. June 7, 2006); *Carillo v. Dretke*, 2004 WL 3008605 (N.D.Tex. December 28, 2004) (Texas DNA testing statute does not toll the statute of limitations)(see Appendix III and IV for a copy of these unpublished opinions).

Honorable Charles R. Fulbruge, III, Clerk
August 31, 2006
Page 19

of the perpetrator, test the evidence and make a finding that if tested, whether it is, ". . . reasonably probable that the person would not have been convicted. . ." *Id.* The Fourteenth Court of Appeals held Hutson's ". . . arguments attacking his original conviction do not pertain to any of the articles in Chapter 64, and thus, we have no jurisdiction to consider them in this appeal. Therefore, we dismiss for lack of jurisdiction, all of . . . [Hutson's] arguments challenging his original conviction." *Hutson v. State*, Slip op. No. 14-04-00414-CR, at *4.

In *Watson v. State*, 96 S.W.3d 497, 500 (Tex.App.–Amarillo, 2002, pet. ref'd) a state court of appeals went further to describe exactly what a trial court can and cannot do in a Rule 64 context:

> Further, chapter 64 entitled Motion for Forensic DNA Testing and articles 64.01 through 64.05 do not authorize a 'convicting court' to render an order releasing a 'convicted person' from incarceration pursuant to a prior conviction, and in a non-capital case, an appeal to this Court is limited to 'findings' by the 'convicting court' under article 64.03 or 64.04, but not otherwise.

> Tex. Const. art. V, § 6 provides that courts of appeals shall 'have original or appellate jurisdiction, under such restrictions and regulations as may be prescribed by law.' Pursuant to this constitutional directive, the Legislature established the authority of a court of appeals to issue writs by Tex. Gov't Code Ann. § 22.221 (Vernon Supp.2002). Under section 22.221, a court of appeals does not have original habeas corpus jurisdiction in a criminal case. *Ex Parte Hawkins*, 885 S.W.2d 586, 588 (Tex.App.-El Paso 1994, no pet.). Although appellant does not designate his request as an application for writ of habeas corpus, in effect the relief he seeks amounts to a request for habeas relief. Under Tex.Code Crim. Proc. Ann. art. 11.05 (Vernon 1977), the Court of Criminal Appeals, the District Courts, and the County Courts have the power to issue a writ of habeas corpus, but the courts of appeals are not designated as having jurisdiction to entertain or issue writs of habeas corpus. Appellant has not cited any authority indicating that this Court has jurisdiction to consider his second and third points and the requested relief and we

Honorable Charles R. Fulbruge, III, Clerk
August 31, 2006
Page 20

> have found none.    Therefore, we have no jurisdiction to consider
> appellant's second and third points of error, and they are hereby
> dismissed for want of jurisdiction.

Further, the court of appeals, discussed what could have been done by a state writ
court, thus demonstrating that a challenge to a state conviction, is necessarily a writ
of habeas corpus, and that a trial court acting on a Rule 64 motion does not have the
same powers as a habeas court. The TCCA expressed the same rule in *Wolfe v. State*,
120 S.W.3d 368, 372 (Tex.Crim.App. 2003):

> Chapter 64 authorizes the convicting court to order DNA testing, and no
> more. . . .   Our holding today does not contravene the purpose of
> Chapter 64, which is to 'give convicted people full access to the courts
> . . . and to provide a check on individual courts' decisions. . . .'
> Appellant was given the opportunity to have post-conviction DNA tests
> performed.   The judge then ruled on whether the test were favorable or
> unfavorable to appellant.    Chapter 64 authorizes no further actions.
> Appellant has received his 'check' on the court by being granted the
> post-conviction DNA test results, and the intended purpose of Chapter
> 64 has been fulfilled.

Of course, the state writ provides the procedure for discovering evidence, for granting
relief, reversing convictions or sentences, and releasing a criminal defendant from
unlawful custody.   Since this is, categorically, not the purpose of a motion for DNA
testing under state law, there is no basis for tolling for, what is, quite simply, an
evidentiary discovery mechanism.

Further, the filing of a motion for DNA testing should not toll the statute of
limitation because it conflicts with the goals of the AEDPA.   The Supreme Court held
in *Carey v. Saffold*, 536 U.S. 214, 222 (2002) that the ". . . AEDPA's tolling rule is
designed to protect the principles of 'comity, finality, and federalism,' by promoting
'the exhaustion of state remedies while respecting the interest of finality of state court
judgments. . . .'", (*citing Duncan v. Walker*, *supra,* at 178).

"'Comity . . . dictates that when a prisoner alleges that his continued

Honorable Charles R. Fulbruge, III, Clerk
August 31, 2006
Page 21

confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review his claim and provide any necessary relief.'" *Williams v. Taylor*, 529 U.S. 420, 437 (2000) *quoting O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). Comity is not promoted by a DNA testing motion because review and relief is not contemplated by the statute.[21]

Also, a motion for DNA testing would not promote finality of state court judgments. In fact, the motion could pend for long periods of time, no relief could be granted even if the motion to test DNA is granted, and then a state writ could be filed years after the conviction became final, providing relief. As demonstrated in this case, the DNA testing motion and the appeal from the denial therefrom, would have tolled from prior to the conclusion of Hutson's direct appeal through the filing of his state and federal writ, without the opportunity for affecting the conviction in any way.

It is interesting to note that the only way that the DNA testing motion could have had any affect on comity[22] or finality is if it were brought simultaneously with the filing of a state writ. Further, if Hutson would have chosen to seek DNA testing as part of his state writ proceeding, *see State v. Patrick*, 86 S.W.3d 592, 595 n.7 (Tex.Crim.App. 2002) ("[a]t least three judges on this Court [TCCA] have indicated, before the advent of Chapter 64, that there is 'no other available procedure' than an application for writ of habeas corpus for obtaining DNA testing. . . .", *citing Ex parte McGinn*, 54 S.W.3d 324 (Tex.Crim.App. 2000) and filed both in January 2003, he would have effectively tolled the statute of limitations until the state writ was decided. This he chose not to do, instead Hutson filed his motion for DNA testing on January 3, 2003, and simultaneously pursued his state writ remedies on July 26, 2004,

[21] A DNA motion provides a vehicle for providing a possibility to determine a factual issue specifically related to actual innocence; however, actual innocence is not a ground for federal habeas relief. *Herrera v. Collins*, 506 U.S. 390 (1993).

[22] If the state courts were required to complete the DNA testing trial-court and appellate process before entertaining a state writ, it would promote comity to toll for the time that the DNA testing motion was pending. Hutson's case demonstrates that this is not required under state law and justifies the conclusion that tolling should be denied.

Honorable Charles R. Fulbruge, III, Clerk
August 31, 2006
Page 22

*Ex parte Hutson*, Application No. 56,004-02, at 2, while the appeal of his DNA motion was pending.

**In the Alternative, Should this Court Find that a Motion for DNA Testing is a Tolling Mechanism, the Motion for DNA Testing in this Case does Not Toll Because There was No DNA Evidence to Test, thereby, Prohibiting Review.**

The DNA statute provides for review of the conviction only upon very limited circumstances. In short, there must be DNA evidence to test, Article 64.01; the DNA evidence must be in a condition to be tested; and, identity must have been, or be now, an issue in the case. Article 64.03. Only after these predicates are fulfilled, may the trial court order testing and then subject the tested evidence to review:

> ART. 64.04. FINDING
>
> After examining the results of testing under Article 64.03, the convicting court shall hold a hearing and make a finding as to whether, had the results been available during the trial of the offense, it is reasonably probable that the person would not have been convicted. . . .

*See* Appendix I, for a complete copy of the DNA testing statute.

In this case, Hutson failed to satisfy any of the predicates for testing. First, there was no testable DNA evidence;[23] therefore, no DNA testing was possible, *Wilbert Ray Hutson v. State*, Slip op. No.14-04-00414-CR, at *5, and, second, identity is not now and never was an issue in the case. *See* Statement of Facts, subsection of this brief, *supra*, at 5-8. Having failed to satisfy the requirements of the statute, the trial court was unable to review the conviction[24] to determine whether it

---

[23] This finding of fact is entitled to a presumption of correctness pursuant to 28 U.S.C. § 2254(e).

[24] A motion for reconsideration of a state writ must be considered by the TCCA in order for the motion to toll the statute of limitations, i.e., no review no tolling. *Lookingbill v. Cockrell*, 293 F.3d 256, 262 (5th Cir. 2002) *citing Emerson v. Johnson*, 243 F.3d 931, 935 (5th Cir. 2001)(COA granted on this issue in *Hooks v.*

Honorable Charles R. Fulbruge, III, Clerk
August 31, 2006
Page 23

was "reasonably probable that the person would not have been convicted." Article 64.04. The inability of the trial court to "review" any tested DNA evidence in relationship to the evidence relied on for conviction, rendered Hutson's *frivolous*[25] motion for DNA testing, a non-tolling event.

## CONCLUSION

For the above reasons, the Director requests that the judgment of the district court be affirmed.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

DON CLEMMER
Deputy Attorney General for
Criminal Justice

GENA BUNN
Assistant Attorney General
Chief, Postconviction Litigation Division

_____

*Lead Counsel

S. MICHAEL BOZARTH*
Assistant Attorney General
State Bar No. 02801400

_____

*Quarterman*, No. 05-40878).

[25] Emphasis added by the undersigned.

Honorable Charles R. Fulbruge, III, Clerk
August 31, 2006
Page 24

P. O. Box 12548, Capitol Station
Austin, Texas  78711
(512) 463-2032
Facsimile No. (512) 936-1280

ATTORNEYS FOR
RESPONDENT-APPELLEE

## CERTIFICATE OF SERVICE

I, S. Michael Bozarth, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing Letter Brief of Respondent-Appellee has been served by placing same in the United States Mail, postage prepaid, on this the 31st day of August, 2006, addressed to:

Wilbert Ray Hutson
TDCJ-CID No. 1063914
Ellis Unit
Huntsville, Texas 77343

_____
S. MICHAEL BOZARTH
Assistant Attorney General

Honorable Charles R. Fulbruge, III, Clerk
August 31, 2006
Page 25

## CERTIFICATE OF COMPLIANCE

I, S. Michael Bozarth, Assistant Attorney General of Texas, do hereby certify that this brief complies with FED. R. APP. PROC. 32(a)(7)(C) in that it contains 7847 words.  Corel Word Perfect 12, Times New Roman, 14 point.


_____
S. MICHAEL BOZARTH
Assistant Attorney General